UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER W.,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CASE NO. C20-5840-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before Administrative Law Judge Rebecca L. Jones (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1977.[1] Plaintiff has limited education[2] and previously

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

[2] Plaintiff testified that she remembers sitting for the GED examination, but she was not sure whether she had been awarded a GED. (AR 61.)

ORDER
PAGE - 1

worked as a cashier, a fast food worker, and a stock clerk. (AR 38.) Plaintiff filed an application for DIB on April 27, 2018, and an application for SSI on April 27, 20218, alleging disability beginning June 1, 2017. (AR 242-51.) The applications were denied at the initial level and on reconsideration. On October 1, 2019, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE). (AR 48-95.) On December 11, 2019, the ALJ issued a decision finding Plaintiff not disabled. (AR 23-46.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on July 21, 2020 (AR 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 28.)

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: cervical spine degenerative disc disease; migraine headaches; obesity; degenerative joint disease of the bilateral knees; irritable bowel syndrome; and major depressive disorder. (AR 28-29.) The ALJ also found that the record contained evidence of the following conditions that did not rise to the level of severe impairment: mild esophagitis; conjunctivitis; vitamin B12 deficiency; sleep apnea; hemorrhoids; hyperlipidemia; and uterine fibroid, status post total hysterectomy. (AR 29.)

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 29.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 41.967(b), with the following limitations: "She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally reach overhead bilaterally. She cannot tolerate concentrated exposure to vibration and to hazards in the workplace, such as moving machinery and unprotected heights. She can perform simple, routine tasks involving no public contact. She can tolerate occasional superficial contact with co-workers, but with no team tasks. She would do better with verbal

ORDER
PAGE - 3

instruction versus written instruction." (AR 32.) With that assessment, the ALJ found Plaintiff unable to perform her past relevant work. (AR 38.)

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as a routing clerk, housekeeper cleaner, and marking clerk. (AR 39.)

Plaintiff argues that the ALJ erred by (1) not providing specific or legitimate reasons for rejecting the medical opinions of three examining doctors; (2) not providing clear or convincing reasons for rejecting Plaintiff's testimony regarding her symptoms and limitations; and (3) failing to account for the symptoms of Plaintiff's other impairments in assessing Plaintiff's RFC. Plaintiff requests remand for an award of benefits or, in the alternative, remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

**1. Medical Opinions**

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

ORDER
PAGE - 4

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5852 (Jan. 18, 2017) ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision … [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us."). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

    A.  <u>Dr. Terilee Wingate, Ph.D.</u>

Dr. Wingate conducted a mental status examination (MSE) on Plaintiff on December 27, 2018, and diagnosed Plaintiff with chronic post-traumatic stress disorder (PTSD) and borderline personality disorder. (AR 829-37.) Dr. Wingate determined that Plaintiff had a "marked" limitation (*i.e.*, "a very significant limitation on the ability to perform the activity") in her ability to perform activities within a schedule; to maintain regular attendance; to be punctual with customary tolerances without special supervision; to maintain appropriate behavior in a work setting; and to complete a normal work day and work week without interruptions from psychologically based symptoms. (AR 831.) Dr. Wingate found "moderate" or less limitation in all other areas but determined that Plaintiff's overall severity based on the combined impact of all diagnosed impairments was also "marked." (AR 831-32.) Dr. Wingate further opined that Plaintiff displayed normal limits in thought process and content, orientation, perception, and abstract thoughts, but that Plaintiff's memory, fund of knowledge, concentration, and insight and judgment were not within normal limits. (AR 833.)

ORDER
PAGE - 5

The ALJ found Dr. Wingate's opinion regarding Plaintiff's marked limitations unpersuasive. (AR 35.) The ALJ concluded that Dr. Wingate's findings "do not support the marked limitations as the claimant showed the ability to concentrate, she was cooperative, she had a good memory, and there is no apparent reason why she would be unable to maintain a full time work schedule on a regular and continuing basis without interruptions from psychologically-based symptoms and without special supervision." (AR 35.) The ALJ further concluded that Dr. Wingate's findings "appear to be largely based on the claimant's self-reports, which are inconsistent with the evidence from either source, or with the claimant's health treatment notes." (AR 35.) The ALJ, however, failed to explain how or why the medical evidence in the record either fails to support or is inconsistent with Dr. Wingate's conclusions or why the ALJ's alternative conclusions are correct.

The ALJ noted that, during the MSE, Plaintiff "was able to engage in a three-step task, she recalled four out of four words, she demonstrated basic general knowledge, she performed serial 3s without error, she appropriately interpreted a common proverb, and she demonstrated good judgment when presented with a difficult situation." (AR 35.) However, the ALJ failed to consider other MSE findings that support Dr. Wingate's conclusions, such as findings that Plaintiff's recollection during the three-step task faltered after five minutes and that Plaintiff made errors on serial 7s.[3] (AR 833.) The MSE findings thus do not support the ALJ's conclusions that Plaintiff has "a good memory" and "the ability to concentrate." (AR 35.)

---

[3] The Court notes that the MSE findings concerning Plaintiff's memory, fund of knowledge, concentration, and insight and judgment were based clinical tests and not on Plaintiff's self-reports, and the examiner noted no malingering. (AR 833.) *See Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.").

ORDER
PAGE - 6

Similarly, the MSE findings do not support the ALJ's conclusions that Plaintiff demonstrated "basic general knowledge." (AR 35.) To the contrary, the MSE findings show that, although Plaintiff was able to identify current event and five major U.S. cities, Plaintiff was unable to name the vice president or governor of Washington and identify both states bordering Washington. (AR 833.) The ALJ thus failed to adequately consider the objective medical evidence and supporting explanations provided by Dr. Wingate when evaluating the persuasiveness of Dr. Wingate's opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability factor).

Additionally, as discussed further below, the ALJ failed to consider the opinions of Drs. W. Michael Rogers and Andrew Larsen, who, consistent with Dr. Wingate's opinion, found that Plaintiff had impaired memory functioning and difficulty maintaining concentration. (AR 491, 825.) The ALJ thus failed to adequately consider the consistency of Dr. Wingate's opinion with the evidence from other sources when evaluating the persuasiveness of Dr. Wingate's opinion. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency factor).

Because the ALJ failed to adequately evaluate supportability and consistency when articulating the persuasiveness of Dr. Wingate's opinion, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), the ALJ erred by discounting Dr. Wingate's opinion. This error was harmful because it resulted in an RFC determination that failed to account for all assessed functional limitations

B. Dr. W. Michael Rogers, Psy.D.

Dr. Rogers performed a mental evaluation on Plaintiff on August 25, 2018, and made the following functional assessment:

> The claimant appears to have the capacity to reason and to understand. Memory functioning seems impaired across all domains. Concentration and persistence appear limited. Interpersonally, the claimant comes across as somewhat paranoid,

ORDER
PAGE - 7

>> edgy, and irritable. Activities of daily living appear to require modifications and/or assistance. The claimant's current level of adaptation seems guarded.

(AR 491.)

The ALJ found Dr. Rogers' conclusions partially persuasive but noted that "the mental status examination findings show no significant concentration or persistence difficulties, good memory, and the ability to interact in a satisfactory manner." (AR 34.) The ALJ, however, failed to explain how or why the medical evidence in the record either fails to support or is inconsistent with Dr. Rogers' conclusions or why the ALJ's alternative conclusions are correct.

The ALJ noted that Plaintiff "was able to recall basic information and she provided evidence of at least a basic fund of knowledge. The completion of serial 7s showed the claimant was able to concentrate. She was also able to think abstractly and follow a three-step command without difficulty." (AR 34.) However, the ALJ failed to consider other findings in the evaluation that support Dr. Rogers' conclusions, such as findings that Plaintiff had difficulty recalling past presidents and was unable to recall three objects after a five-minute delay.[4] (AR 489.) The mental health evaluation findings thus do not support the ALJ's conclusion that Plaintiff has a "good memory." (AR 34.)

Similarly, the evaluation findings do not support the ALJ's conclusions that Plaintiff has a "basic fund of knowledge" and "the ability to interact in a satisfactory manner." (AR 34.) To the contrary, the findings show that Plaintiff was unable to identify current events or the two states that border Washington and that Plaintiff appeared "on edge; irritable, anxious, and paranoid."

---

[4] The Court notes that Dr. Rogers' mental evaluation findings concerning Plaintiff's memory, fund of knowledge, concentration, and insight and judgment were based clinical tests and not on Plaintiff's self-reports. (AR 489-91.) *See Ghanim*, 763 F.3d at 1162-63 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.").

ORDER
PAGE - 8

(AR 489.) The ALJ thus failed to adequately consider the objective medical evidence and supporting explanations provided by Dr. Rogers when evaluating the persuasiveness of his opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability factor).

Additionally, as previously noted, the ALJ failed to consider the opinions of Drs. Wingate and Larsen, who, consistent with Dr. Rogers' opinion, found that Plaintiff had limited memory functioning and difficulty maintaining concentration. (AR 825, 833.) The ALJ thus failed to adequately consider the consistency of Dr. Rogers' opinion with the evidence from other sources when evaluating the persuasiveness of his opinion. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency factor).

Because the ALJ failed to adequately evaluate supportability and consistency when articulating the persuasiveness of Dr. Rogers' opinion, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), the ALJ erred by discounting Dr. Rogers' opinion. This error was harmful because it resulted in an RFC determination that failed to account for all assessed functional limitations

C. <u>Dr. Andrew Larsen, M.D.</u>

Dr. Larsen is Plaintiff's treating physician. In November 2018, Dr. Larsen completed a WorkFirst form on which he opined that Plaintiff has physical, mental, emotional, and developmental conditions that limit her ability to work, look for work, or prepare for work. (AR 825.) Specifically, Dr. Larsen diagnosed Plaintiff with knee osteoarthritis, migraine with aura/cervicalgia, bipolar II disorder, a learning disability, and obstructive sleep apnea. (AR 825.) Dr. Larsen completed another WorkFirst form in January 2020 on which Dr. Larsen again noted that Plaintiff has the following limiting conditions: migraine with aura, bipolar II disorder, irritable bowel syndrome, Klippel-Feil Syndrome, and knee osteoarthritis. (AR 14.) In both 2018 and 2020,

ORDER
PAGE - 9

Dr. Larsen opined that Plaintiff's conditions limit her to sedentary work with the ability to lift 10 pounds maximum. (AR 15, 826.)

The ALJ found that Dr. Larsen's opinion was "not supported by the medical evidence." (AR 36.) The ALJ concluded that Dr. Larsen's "assessment of the claimant being capable of sedentary work is overly restrictive in light of the objective findings, the claimant's demonstrated functioning, and the record as a whole." (AR 36.) The ALJ, however, failed to explain how or why the medical evidence in the record either fails to support or is inconsistent with Dr. Larsen's conclusions.

The ALJ found Dr. Larsen's opinion unsupported based on "the reasons set forth throughout this decision," noting that "the record supports a finding that the claimant is capable of a range of light work, as set for this the residual functioning capacity assessment above, meaning the claimant can do the jobs identified by the vocational expert." (AR 36.) The ALJ's reasoning is insufficient. The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). Here, the ALJ evaluated neither the supportability nor the consistency of Dr. Larsen's opinion considering the objective medical evidence in the record. Indeed, the record show that Dr. Larsen supported his opinion with findings that Plaintiff has difficulty reading and writing, standing for long periods of time, and maintaining concentration and that Plaintiff's conditions cause her to fall asleep when standing. (AR 825.) Additionally, Dr. Larsen's 2018 and 2020 opinions are consistent (AR 15, 826) and, as noted previously, his conclusion regarding Plaintiff's limited concentration is consistent with the opinions of Drs. Wingate and Rogers. (AR 491, 833.)

ORDER
PAGE - 10

Because the ALJ failed to evaluate supportability and consistency when articulating the persuasiveness of Dr. Larsen's opinion, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), the ALJ erred by discounting Dr. Larsen's opinion. This error was harmful because it resulted in an RFC determination that failed to account for all assessed functional limitations

**2. Plaintiff's Symptom Testimony**

Plaintiff contends that the ALJ erred by failing to provide clear or convincing evidence for discounting the Plaintiff's testimony regarding her symptoms and limitations.

The rejection of a claimant's subjective symptom testimony[5] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

A. <u>Objective Medical Evidence</u>

The ALJ concluded that Plaintiff's testimony regarding the severity of her symptoms was

---

[5] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

inconsistent with the objective evidence of record, which the ALJ described as containing "largely unremarkable workups for many of [Plaintiff's] complaints and largely unremarkable imaging studies." (AR 37.)

The ALJ discounted Plaintiff's reports about a neck and knee disorder, noting that the imaging of Plaintiff's neck and knee disorders "has shown only mild findings" and that, although Plaintiff "stated her cervical spine vertebrae have fused together, . . . there is no evidence of this, so it is not clear why the claimant thinks this is the case." (AR 37.) The ALJ, however, misrepresented the record. The record contains objective medical evidence that Plaintiff has been diagnosed with knee osteoarthritis, cervicalgia, and a vertebral anomaly of the neck diagnosed as Klippel-Feil Syndrome. (AR 14-16, 825, 846-47, 860-63.) The ALJ did not address the medical evidence showing Plaintiff's neck and spine disorder, nor did the ALJ explain how or why the medical findings undermined Plaintiff's testimony. Therefore, the ALJ's reasoning was not specific, clear, or convincing. *See Burrell*, 775 F.3d at 1136.

The ALJ also discounted Plaintiff's reports of migraine headaches because Plaintiff attributed the headaches to a head injury from ten years ago which did not prevent her from working. (AR 37.) However, Plaintiff also attributed her headache pain to her congenital spine and neck disorder described above, which conditions Plaintiff supported with objective medical evidence. (AR 66-68, 846-47, 853-73.) The ALJ "cannot simply pick out a few isolated instances" of medical health that support her conclusion but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of her symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). That Plaintiff's prior head injury did not prevent her from working cannot serve as clear and convincing reasons for discounting the Plaintiff's testimony concerning her migraine headaches. The ALJ did acknowledge that Plaintiff's

doctors concluded that "there was a large musculoskeletal component to [Plaintiff's] pain complaints"; however, the ALJ apparently rejected that conclusion, noting that there was no neurological etiology to Plaintiff's headaches. (AR 37.) The ALJ did not explain how or why the medical evidence undermined Plaintiff's testimony or how or why the medical evidence concerning Plaintiff's headaches was inconsistent or unsupported by the record. Therefore, the ALJ's reasoning was not specific, clear, or convincing. *See Burrell*, 775 F.3d at 1136.

The ALJ also discounted Plaintiff's reports of pain attributed to musculoskeletal causes and enlarged breasts, noting that "imaging of the [Plaintiff's] cervical spine and knees shows only mild degenerative changes, with no recommendation for surgery" and that "[t]reatment for all of the claimant's impairments has largely been conservative and routine in nature throughout the period at issue." (AR 37.) An ALJ may discount a claimant's testimony concerning the intensity of pain experienced where treatment for a condition is "routine and conservative." *See Edginton v. Colvin*, 625 Fed. Appx. 334, 336 (9th Cir. Sept. 1, 2015). However, the record does not support the ALJ's characterization. The record shows that Plaintiff's treating physician referred Plaintiff for bariatric surgery and breast reduction surgery to alleviate Plaintiff's chest and knee pain (AR 750, 775); Plaintiff received steroid injections in her knees as well as nerve blocks for her cervical spine pain (AR 755, 853-56, 860-63); due to the ineffectiveness of the knee steroid injections, Plaintiff was referred to orthopedics to consider viscous injections (AR 740.) Plaintiff testified, however, that she opted out of weight loss surgery to alleviate her neck pain due to phobia of "being cut" and that the injections did not provide her with relief. (AR 69, 73.) Therefore, the Court finds that the ALJ's assessment of Plaintiff's treatment as conservative is not supported by clear and convincing reasons. *See Burrell*, 775 F.3d at 1136.

Finally, the ALJ discounted Plaintiff's testimony regarding her mental health, noting that "two thorough evaluations produced mental status examination findings that show the claimant does not have a significant psychological disorder that precludes performance of a full time work schedule on a regular and continuing basis." (AR 37.) However, the evidence in the record indicates that Plaintiff has several diagnosed mental health conditions, including major depressive disorder, PTSD, bipolar disorder, and borderline personality disorder. (AR 14, 774-76, 825, 831.) The ALJ did not address these diagnoses as they relate to Plaintiff's testimony. The ALJ thus failed to explain why the mental status examination findings that showed no significant psychological disorder were more relevant to Plaintiff's claims than the medical opinions diagnosing several mental health disorders. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b) (requiring the ALJ to articulate how the medical opinions and prior medical findings in a claim were considered).

The ALJ further discounted Plaintiff's testimony regarding her mental health and thoughts of self-harm, noting that Plaintiff's "engagement with mental health treatment has only been fairly recent, within the last year or so" and that, although Plaintiff testified to thoughts of self-harm "these thoughts were not a significant distraction during the mental status examinations with the consultative examiner or the DSHS examiner." (AR 37.) The apparent inconsistency between Plaintiff's statements and the examiners' observations cannot serve as clear and convincing reasons for discounting Plaintiff's testimony concerning her mental health symptoms. *See Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (claimants who suffer from mental conditions may have symptoms that wax and wane, with downward cycles, cycles of improvement, and mixed results from treatment).

Because the ALJ did not identify a clear and convincing conflict with the medical record supported by substantial evidence, the ALJ erred by discounting Plaintiff's testimony.

B. Secondary Gain

In discounting Plaintiff's testimony, the ALJ noted that "[t]here also appears to be some secondary gain motivate in this case; in September 2018, the claimant told her therapist that she could not live off her daughter's $699 per month SSID funds." (AR 37.) Evidence that the claimant was motivated by secondary gain is sufficient to support an ALJ's rejection of testimony. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the tendency to exaggerate or engage in manipulative conduct during the administrative process is a permissible reason to discount the credibility of the claimant's reported symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Here, the ALJ did not identify any specific instances of malingering, exaggerations, or manipulative behavior. Therefore, the ALJ's conclusion regarding secondary gain motivation is unsupported.

**3. Other Impairments**

Plaintiff avers that the ALJ erred by failing to include limitations related to Plaintiff's Klippel-Feil Syndrome, sleep apnea, PTSD, borderline personality disorder, or bipolar disorder in the RFC. The ALJ identified Plaintiff's sleep apnea as a non-severe impairment and noted that Plaintiff's doctors have diagnosed Plaintiff with various mental health conditions, such as PTSD and bipolar disorder. (AR 29.) The ALJ asserted that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (AR 29.)

When assessing the RFC, the ALJ must take into consideration the limitations and restrictions imposed by all of Plaintiff's impairments, even non-severe impairments. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). As a result, the RFC "*should* be exactly the same

ORDER
PAGE - 15

regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original). Here, however, as discussed in the previous sections, the ALJ erred by discounting the medical opinions of Drs. Wingate, Rogers, and Larsen, by discounting Plaintiff's symptom testimony, and by misrepresenting the record concerning Plaintiff's cervical spine disorder. As a result, the RFC determination failed to account for all of Plaintiff's functional limitations. Remand is accordingly necessary to afford the ALJ opportunity to properly assess the above-described medical evidence in the first instance.

## CONCLUSION

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this 9th day of June, 2021.

MARY ALICE THEILER
United States Magistrate Judge

ORDER
PAGE - 16